CHERYL HILL
v.
LIVINGSTON PARISH SCHOOL BOARD.
No. 2007 CA 1232.
Court of Appeal of Louisiana, First Circuit.
February 20, 2008.
SCOTT D. WILSON, Baton Rouge, Louisiana, Counsel for Plaintiff/Appellee Cheryl Hill.
CAREY T. JONES, Denham Springs, Louisiana, Counsel for Defendant/Appellant Livingston Parish School Board.
Before: PARRO, KUHN and DOWNING, JJ.
KUHN, J.
Defendant-appellant, the Livingston Parish School Board (the School Board), appeals the district court's reversal on judicial review of its decision to remove plaintiff-appellee, Cheryl Hill, from her position as a tenured school bus operator. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
At the commencement of the 2005-06 school year, Hill, a tenured bus operator employed by the School Board, discussed the possibility of her driving some French Settlement Elementary School students, who were riding on the school bus of driver Malinda Thornton, to their afternoon drop-off destinations because of the large number of children on Thornton's bus. The two drivers discussed the topic again on September 15, 2005, at French Settlement High School, before the drivers began their routes from that school, which were run prior to the elementary school routes. At that time, Thornton's 65-passenger bus was responsible for driving 68 students. Apparently as a result of population growth after Hurricane Katrina, Thornton advised Hill that there were eleven or twelve elementary school students that needed to be moved to Hill's bus in the afternoons. Hill reminded Thornton that she was on a rigid afternoon schedule because she had to drive her daughter to a special school in Denham Springs by 4:00. The two drivers agreed Hill would drive the additional students that afternoon and that if she was unable to safely deliver the children to their drop-off destinations, they would regroup with Thornton keeping some of the students on her afternoon bus route.
On the afternoon of September 15, 2005, French Settlement Elementary School Principal Lance Hutson had already decided that Hill would carry the additional eleven or twelve students. He indicated that trying out Hill and Thorton's plan of regrouping after a trial run by Hill was not open for discussion because the decision had already been made. The evening before, he had spoken with Thornton about the route change and the school secretary had already called the parents of the involved students by phone, advising them that their children would be riding a different bus. When Hill arrived at the elementary school, Hutson told her that she would have to drive the additional eleven or twelve students. Hill stated that she did not know whether she could take all of them, explaining concerns that the additional drop-off time would require her to work past 4:00 and cause her to be late in tending to her daughter's schooling needs in Denham Springs. Hutson said that because of Thornton's overcrowded bus, they really did not have any other choice.
Hutson believed that the additional student load would impact Hill "another five minutes at most." He explained the extra children would have required Hill to make 6 additional stops over one-and-one-half miles: a stop where four children would depart the bus; two stops with two children exiting; and three single-child drop offs. But the stops were all located on Highways 16 and 444, which are curvy and narrow roads, and a couple of the additional stops were actually in a curve and required the children to cross the road. Hill realized these stops were potentially dangerous and that, to be safe, she would have to turn the bus around and drop those children off on the other side of the road so that they would not have to cross the highway in the curve.
Since Hill continued to question the decision to add the students to her bus, Hutson told her he would contact the School Board's Director of Transportation, Ronnie Vulgamore. Vulgamore was not present in the office at the Department of Transportation (the Department) when Hutson phoned. Consequently, Hutson spoke with Margaret Russell, the route analyst. After explaining the situation, Russell advised Hutson that his plan to move eleven or twelve students from Thornton's bus to Hill's was "fine." Russell requested that Hutson take a head count of the number of students on each bus that afternoon and the following to determine whether another school bus was warranted for that area. According to Vulgamore, Russell advised him that she had told Hutson that this would be a temporary issue.
Hutson returned to Hill and asked her, along with Sharon Morel, an assisting principal at the elementary school, to step into his office, where he advised Hill that he had not been able to speak with Vulgamore but that he had spoken with Russell. Hill stated that she did not care what Russell said. The Department's characterization of the temporary nature of the modification to the bus route on September 15th was not passed along to Hill. Instead, Hutson told Hill, "we're going to put those kids on your bus, and you're going to take them home." Hill said, "I'm not going to take those kids. I'm going to quit." According to Hutson, Hill then stated, "I quit," and he responded by asking Hill for her written resignation.[1] Hill advised him that she would deliver it to the School Board herself. Hutson called the Department office and advised of the situation. Vulgamore returned the phone call and told Hutson that since Hill had verbally quit, she could not drive her route that afternoon.
Hill was with other drivers at the elementary school, apparently waiting to drive the afternoon route. Hutson told Hill to leave and asked the other drivers to come inside so he could speak to them. According to Hill, she did not intend to quit and was willing to drive the eleven or twelve additional students that day; she simply did not want her acquiescence to be considered as her consent to a permanent change.[2]
Hutson testified that he notified all the parents and put the children on a different bus. The eleven or twelve children that were at the heart of this controversy were placed on several other buses.
That afternoon, Vulgamore phoned Hill, requesting her presence at a meeting the following morning. Assistant Superintendent Bill Spear and Hutson were present. Hill was presented with statements written by Hutson and Morel, setting forth their accounts of the events that had transpired on September 15th. Spear told Hill to let him know whether she refuted or denied any of the statements set forth in the written accounts. When Hill indicated that she did not, Spear advised her "that was willful neglect of duty," and offered Hill an opportunity to resign with a prepared resignation letter. Hill declined to sign it.
On September 19, 2005, Hill was present at a personnel conference, along with Superintendent Randy Pope, Vulgamore, and John Watson, the supervisor of human resources. The September 15, 2005 incident was discussed, and Pope explained the options available to Hill, specifically advising her that she could submit her resignation. She was given another opportunity to refute the statements set forth in the written accounts of Hutson and Morel. Vulgamore had brought Hill's personnel file to the conference, and Pope presented it to Hill stating, "[T]here are a number of issues in here from previous years." But the file was not reviewed.[3]
Pursuant to a letter, dated September 21, 2005, Pope reiterated Hutson's account of events that had transpired on September 15th, advised that at the September 16th meeting she had been informed that she "cannot refuse a directive from the principal and/or transportation to accommodate [her] schedule," and had been given an opportunity to resign, which she declined. In his letter, the superintendent stated that he was notifying the School Board of his recommendation to terminate Hill.
A hearing was subsequently held on October 20, 2005, where after the presentation of testimonial and documentary evidence, the School Board concluded that the September 15, 2005 incident constituted willful neglect and removed Hill from her position as a tenured school bus operator.
Hill petitioned the district court for a review of the School Board's action. The district court reversed the School Board and reinstated Hill to her position as a tenured school bus operator. The School Board has suspensively appealed.

DISCUSSION
La. R.S. 17:493 governs the removal of tenured school bus operators, providing in relevant part:
A. A permanent school bus operator shall not be removed from his position except upon written and signed charges of willful neglect of duty, or incompetence, or immorality, or drunkenness while on duty, or physical disability to perform his duties, or failure to keep his transfer equipment in a safe, comfortable, and practical operating condition, or of being a member of or contributing to any group, organization, movement, or corporation that is prohibited by law or injunction from operating in the state, and then only if found guilty after a hearing by the school board of the parish or city in which the school bus operator is employed.
Judicial review of tenure proceedings are limited to an inquiry of whether the School Board complied with the statutory formalities under La. R.S. 17:493 and whether the School Board's findings were supported by substantial evidence. See Wise v. Bossier Parish School Bd., 02-1525, p. 5 (La. 6/27/03), 851 So.2d 1090, 1094.[4] "Substantial evidence" has been defined as "evidence of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions." Wise, 02-1525 at pp. 5-6, 851 So.2d at 1094. In conducting its examination, the district court must give great deference to the school board's findings of fact and credibility. Reasons for dismissal are largely in the sound discretion of the school board. See Wise, 02-1525 at p. 6, 851 So.2d at 1094. Thus, the school board's judgment should not be reversed in the absence of a clear showing of abuse of discretion. Id. Generally, an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. A conclusion is "capricious" when there is no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. Id.
The district court may not substitute its judgment for that of the school board or interfere with the school board's good faith exercise of discretion. The district court's responsibility in such a case is to determine whether the school board's action was supported by substantial evidence, or conversely, constituted an arbitrary decision and thus an abuse of discretion. And as with the district court, a court of appeal may not reverse the decision of a district court unless it finds the school board's termination proceedings failed to comply with statutory formalities and/or the school board's findings were not supported by substantial evidence. Id., 02-1525 at pp. 6-7, 851 So.2d at 1094-95.
"Willful neglect" is defined as the "intentional disregard of a plain or manifest duty, in the performance of which the public ... has an interest." BLACK'S LAW DICTIONARY 1600 (6th ed. 1990); see also Vermilion Parish Bus Drivers & Operators Assoc. v. Vermilion Parish School Bd., 00-57, p. 3 (La. App. 3d Cir. 6/7/00), 769 So.2d 600, 603, writ denied, 00-3029 (La. 1/5/01), 778 So.2d 600. To properly dismiss a tenured employee on the basis of "willful neglect of duty," the school bus operator must have some knowledge that her actions were contrary to school policy gained either through warnings from her supervisors or from general knowledge concerning the responsibilities and conduct of school bus operators. Thus, school bus operators may be dismissed for willful neglect of duty only for a specific action or failure to act in contravention of a direct order or identifiable school policy. See Wise, 02-1525 at p. 7, 851 So.2d at 1095.
Based on our review of the record, we find the School Board failed to present substantial evidence to establish that Hill willfully neglected an identifiable school policy. None of the witnesses who testified for the School Board demonstrated Hill's state of mind on September 15th or explained her actions after she purportedly quit.
According to Hutson, Hill stated "I quit," he advised the Department, and Vulgamore then told him that Hill could not drive the bus. According to Spear, the conduct that constituted willful neglect of duty was when "Hutson requested that [Hill] transport some additional students on September 15th that afternoon and bring them home, she refused to do so." But according to Hill, whose testimony was not contradicted on this point, she went outside and waited with the other school bus operators for the afternoon bell to ring. She testified that she was willing to transport the students and would have if Hutson had not told her to leave. In order for her actions to have been willful, the record must contain some evidence that she intentionally disregarded her duty to transport the students that afternoon. It was Hutson's directive, ordering Hill to leave, that resulted in her failure to transport the students. This lack of a showing of intent is underscored by the fact that Hill declined to sign the prepared resignation letter that administrative officials presented to her after September 15th or to tender her own resignation letter.
Given the dearth of evidence showing a willful neglect of duty, the district court correctly determined that the School Board's findings were not supported by substantial evidence, and the School Board's action of removing Hill from her position as a tenured school bus operator was arbitrary and capricious. The district court's judgment, reversing the School Board and reinstating plaintiff-appellee, Cheryl Hill, to her position as a permanent school bus operator with the Livingston Parish School Board is affirmed. Appeal costs in the amount of $595.50 are assessed against defendant-appellant, the Livingston Parish School Board.
AFFIRMED.
NOTES
[1] According to Hill's testimony, after Hutson told her "you're going to take [the students]," she responded, "I'll quit before I'll take those kids."
[2] Hill's uncontroverted testimony was that on a previous occasion, Russell had explained to her once students were placed on a bus, they were the permanent responsibility of the bus driver.
[3] The only other incident mentioned at the personnel conference was one arising from an August 12, 2005 charge levied against Hill simultaneously with the September 15th charge that the School Board determined was not willful neglect, a decision which has not been appealed.
[4] Although this case involves the application of the school bus operator's tenure law, La. R.S. 17:493, the standard of review is the same as that under the teachers' tenure law, La. R.S. 17:443, because the language of the statutes are virtually identical regarding a review of the School Board's action in this matter. See Vermilion Parish Bus Drivers & Operators Assoc. v. Vermilion Parish School Bd., 00-57, p. 3 (La. App. 3d Cir. 6/7/00), 769 So.2d 600, 603, writ denied, 00-3029 (La. 1/5/01), 778 So.2d 600.